## A02A2195. KELLEY v. THE STATE.
### (581 SE2d 584)

PHIPPS, Judge.

Omisha Kelley was convicted of aggravated assault on Martina Perkinson by cutting her face with an "unknown sharp object, thought to be a knife." On appeal, she challenges the admission of certain testimony. Finding no reversible error, we affirm.

At trial, Perkinson testified that on August 27, 1999, she entered a building at her workplace to pick up her paycheck. Kelley, who also had arrived to pick up her paycheck, began threatening Perkinson. A

manager, Celicia Washington, asked Kelley to leave the premises and detained Perkinson until she thought Kelley had left. But when Perkinson exited the building, Kelley stepped from the side of the building and cut her. Perkinson, who was unable to identify the weapon used, fought Kelley with her fists and eventually pushed Kelley against a glass window, which shattered.

A co-worker who saw Kelley approach Perkinson testified that Kelley used a knife to cut Perkinson's face. As the fight erupted, that co-worker began screaming that Kelley had a knife. Other workers, including Washington, came outside. In stopping the fight, Washington suffered a cut to her arm.

Another co-worker, who had been working inside the building at the time of the incident, heard the commotion. She testified that she immediately went outside, where she saw the broken window, Perkinson's cut face, and Kelley standing "with her knife, like in a stance, like she was getting ready to sling it. . . ."

A police officer responded to a report about the fight and testified that he found Perkinson with a thin cut to her face, apparently caused by "some type of a sharp object." Perkinson also had received lacerations on a shoulder and leg. The officer examined both sides of the window, as well as the glass that had fallen, and saw no blood on any of the glass.

Kelley denied being the aggressor and having a knife. She testified that Perkinson had approached her, threatened her, grabbed her neck, and then thrown her into the window. She claimed that she had picked up a piece of glass and swung it at Perkinson only because, by then, Perkinson was threatening her with a piece of glass. Kelley also presented the testimony of another co-worker, who stated that before the fight erupted, Perkinson had pushed Kelley first.

On appeal, Kelley contends that the trial court erred in permitting the State to introduce prejudicial hearsay in three instances. First, Kelley claims that in an effort to show that she had a knife, the State improperly elicited Perkinson's testimony that during the fight Washington (who did not testify) yelled, "somebody help me." But Washington's cry for help during the offense was part of the res gestae, a well-recognized exception to the hearsay rule.[1] "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."[2] Accordingly, the complained-of testimony by Perkinson was not improper.

Second, Kelley claims that in an effort to depict her as the

---

[1] See *Denny v. State*, 226 Ga. App. 432, 434 (7) (486 SE2d 417) (1997).
[2] OCGA § 24-3-3.

aggressor, the State improperly elicited testimony that just before the fight, Washington had asked Kelley to leave the company's premises.

> Whether an out-of-court statement is hearsay depends on the use of the statement at trial. OCGA § 24-3-1 defines hearsay as evidence that "does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." However, when conversations and similar evidence "are facts to explain conduct and ascertain motives," OCGA § 24-3-2 provides that they shall be admitted in evidence "not as hearsay but as original evidence."[3]

Here, the State used Washington's instruction to Kelley to leave the premises to show Kelley's intent. Despite being given an opportunity to avoid escalation of her verbal altercation with Perkinson, Kelley chose to wait for Perkinson just outside the building, where she would again encounter her. Thus, the testimony did not constitute hearsay. But even if the complained-of testimony was hearsay, it was "relevant evidence of [Kelley's] state of mind and admissible as part of the res gestae."[4]

Third, Kelley complains that the State asked another witness, "just looking at [the police officer's] report it mentioned something about Ms. Washington receiving some kind of injury, knife cut. Did you see that at any time?" The police report was not admitted into evidence, and Kelley complains that the question was intended to prove that she had possessed and used a knife to inflict the injuries sustained by Perkinson. But even if the introduction portion of the question could be viewed as hearsay, any inference taken from it was harmless as cumulative. Although Kelley complains that the question sought to place a knife in her hand, the indictment did not charge her with assaulting Perkinson with a knife, but with "an unknown sharp object, thought to be a knife." The testimony of several witnesses, including Kelley herself, placed such an object in her hand during the incident.

Finally, we note that the evidence was sufficient to sustain Kel-

---

[3] *Sturkey v. State*, 271 Ga. 572, 573 (2) (522 SE2d 463) (1999).

[4] (Citations and punctuation omitted.) *Ross v. State*, 231 Ga. App. 793, 799 (9) (499 SE2d 642) (1998); see also *Tesfaye v. State*, 275 Ga. 439, 443 (6) (569 SE2d 849) (2002) ("One of the two kinds of res gestae evidence recognized by Judge Daniel in the Georgia Handbook on Criminal Evidence, [§ 4-58] (2002 ed.)[,] encompasses the 'circumstances, facts and declarations which grow out of the main criminal act, are contemporaneous with it, and serve to illustrate it.' 'Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae.' ") (citations omitted).

ley's conviction without relying on any of the complained-of evidence.[5]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 13, 2003.

*Christopher G. Paul*, for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.

---

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).