## S11A0050. COLLIER v. THE STATE.
### (707 SE2d 102)

CARLEY, Presiding Justice.

A jury found Lester Collier guilty of the malice murder of Ben Sullen, Jr. The trial court entered judgment of conviction on the guilty verdict and sentenced Collier to life imprisonment. A motion for new trial was denied, and Collier appeals.[*]

1. Construed most strongly in support of the verdict, the evidence, including eyewitness testimony, shows that Collier threatened to defend himself by using a pipe against the victim. On the following day, Collier argued with the intoxicated victim in the street and struck him more than once with a metal pole or pipe as the victim started to walk away. Appellant fled, and a three or four-foot long, blood-stained pipe was found leaning against his mailbox. The victim died of blunt force trauma to the head and chest. The evidence was sufficient to authorize a rational trier of fact to find Collier guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Walker v. State,* 281 Ga. 521 (1) (640 SE2d 274) (2007).

2. Collier contends that the trial court erred by excluding evidence of the victim's propensity for violence when intoxicated and his reputation for carrying dangerous weapons.

It has long been established that the victim's general reputation for violence, including his carrying of dangerous weapons, is inadmissible in a murder trial unless the defendant makes a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly attempting to defend himself. *Alexander v. State,* 285 Ga. 166, 167 (2) (675 SE2d 23) (2009); *Cooper v. State,* 249 Ga. 58, 61 (2) (287 SE2d 212) (1982);

---

[*] The crimes occurred on September 2, 2005, and the grand jury returned an indictment on December 6, 2005. The jury found Collier guilty on February 8, 2008 and, on that same day, the trial court entered the judgment of conviction and sentence. The motion for new trial was filed on February 29, 2008, amended on March 24 and 25, 2009, and denied on July 20, 2010. Collier filed the notice of appeal on August 11, 2010. The case was docketed in this Court for the January 2011 term and submitted for decision on the briefs.

*Campbell v. State*, 222 Ga. 570, 573 (2) (151 SE2d 132) (1966). To meet this three-pronged test, Collier relies upon his own testimony showing that the intoxicated victim started an argument and tried to hit Collier with the pipe before he took it away, that the victim then swung at Collier with his fist, that Collier then struck the victim in the head with the pipe, and that, while the victim was staggering and reaching towards his pocket, Collier struck him on the head a second time with the pipe even though there was nothing to indicate to Collier that the victim had a weapon in his pocket.

Standing alone, this testimony fails to show that Collier was honestly seeking to defend himself either time that he struck the victim with the pipe. See *Cooper v. State*, supra. Under that testimony, Collier had already disarmed the victim before striking him the first time and, after that first blow by Collier with the metal pipe, the victim neither committed nor demonstrated the ability to commit any further assault against Collier. "Justification can not be based on a deadly assault which has been completely ended, unless the assailant has some further apparent ability to continue it." *Cochran v. State*, 9 Ga. App. 824, 825 (1) (72 SE 281) (1911). "Furthermore, '(t)he doctrine of reasonable fear does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing.' [Cit.]" *Carter v. State*, 285 Ga. 565, 566 (2) (678 SE2d 909) (2009). Verbal threats and fisticuffs do not justify the use of deadly force. *Felder v. State*, 273 Ga. 844, 846 (4) (545 SE2d 918) (2001); *Lewis v. State*, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997). Contrary to Collier's further argument, he is not "permitted to establish the prima facie case of justification by using the very evidence for which the prima facie case serves as foundation." *Walden v. State*, 267 Ga. 162, 164 (2) (b) (476 SE2d 259) (1996).

Collier also complains that the three-pronged test should not be used to determine whether the victim's reputation for violence is admissible, because it is not used to determine whether the jury should be charged on justification. As already indicated, however, that three-pronged test is an essential and long-standing prerequisite to application of the reputation exception to the venerable rule that evidence of a victim's character is inadmissible. We reaffirm the three-pronged test in this context regardless of whether it has a role to play in determining the applicability of instructions on justification. Compare *Buice v. State*, 281 Ga. App. 595, 598 (3) (636 SE2d 676) (2006) with *Shackelford v. State*, 270 Ga. App. 12, 16 (2) (606 SE2d 22) (2004).

3. Collier urges that the trial court violated OCGA § 24-9-84.1 by admitting into evidence his 1996 convictions for two drug offenses and by failing to enter express findings in the record.

Although Collier himself testified and admitted the drug convictions on direct examination, the record does not contain any previous motion in limine, objection, hearing, or ruling regarding the admissibility of those prior convictions. These omissions certainly are not cured by trial counsel's testimony that, although she was not looking at the transcripts and was speaking strictly from memory, she had been under the impression that the prior convictions would come in. Thus, we are precluded from reviewing this issue on appeal. *Dixon v. State*, 231 Ga. 33, 36 (9) (200 SE2d 138) (1973); *Mullins v. State*, 224 Ga. App. 218-219 (2) (480 SE2d 264) (1997).

The trial court had no duty to conduct the applicable balancing test in OCGA § 24-9-84.1 absent an objection. *Thomas v. State*, 291 Ga. App. 795, 800 (3) (662 SE2d 849) (2008). Even if Collier had previously moved for exclusion of the prior convictions and a hearing had been held, the absence of any ruling on the record would take this case out of the usual rule that the record is preserved and the defendant is not required to object to the evidence during trial. *Watson v. State*, 278 Ga. 763, 767 (2) (b) (604 SE2d 804) (2004).

Collier asserts that trial counsel's failure to preserve this issue constitutes ineffective assistance of counsel. However, this claim is waived because it was not raised either in the motion for new trial as amended or at the hearing thereon by appellate counsel who had been appointed following Collier's conviction. *Allen v. State*, 286 Ga. 392, 399 (5) (b) (687 SE2d 799) (2010). Moreover, this allegation of ineffective assistance is without merit, as trial counsel's testimony shows that she pursued the reasonable strategy, however mistaken it may appear with hindsight, " 'of placing the damaging information before the jury through [Collier's] direct testimony, rather than risk having the information extracted from him on cross-examination.' [Cits.]" *Wilson v. State*, 291 Ga. App. 69, 74-75 (4) (b) (661 SE2d 221) (2008).

4. The following jury charge is enumerated as error:

> To impeach a witness is to prove that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified or proof that the defendant has been convicted of the offenses of Violation of the Georgia Controlled Substances Act.

Collier contends that, by this charge, the trial court invaded the province of the jury, expressed an opinion, and gave contradictory and confusing instructions on impeachment and credibility of a witness, specifically of Collier. Because Collier "was tried after the effective date of the 2007 amendment to OCGA § 17-8-58 and 'did not specifically object to (this) charge . . . at the conclusion of the jury

charge, he has waived his right to urge error on appeal.' [Cit.]" *Madrigal v. State*, 287 Ga. 121, 122-123 (3) (694 SE2d 652) (2010).

Moreover, we find no reversible error, much less any "plain error" pursuant to OCGA § 17-8-58 (b), assuming that analysis under that provision is proper in this case. Contrary to Collier's argument that the charge essentially directed the jury that he is unworthy of belief since he was convicted of drug offenses, the charge states that a witness "may be" impeached, not that he "is" impeached, by proof of drug convictions. See *Jones v. State*, 246 Ga. App. 596, 598 (3) (539 SE2d 602) (2000). Furthermore, the trial court at no time suggested that it found Collier's testimony less than credible. Nor did it otherwise impermissibly comment on the evidence by simply recognizing that the drug convictions were the only ones offered for impeachment purposes. *Shy v. State*, 220 Ga. App. 910, 912 (3) (470 SE2d 484) (1996). Even if the language of which Collier complains was to have the appearance of usurping the province of the jury when considered in isolation, it must be read in conjunction with the immediately following language that "[i]t is for you to determine whether or not a witness has been impeached and to determine the credibility of such witness and the weight the witness's testimony shall receive in the consideration of the case." Because the charge thereby makes plain that the jury is the sole judge of witness credibility, it "provides no cause for reversal . . . ." *Berry v. State*, 267 Ga. 476, 480 (4) (c) (480 SE2d 32) (1997).

Furthermore, because no reversible error occurred with respect to the jury instruction on impeachment, Collier cannot succeed on his alternative claim that trial counsel rendered ineffective assistance in failing to object to that instruction. *Jennings v. State*, 288 Ga. 120, 123 (6) (a)-(b) (702 SE2d 151) (2010); *Butts v. State*, 273 Ga. 760, 771 (30) (546 SE2d 472) (2001).

*Judgment affirmed. All the Justices concur, except Nahmias, J., who specially concurs.*

NAHMIAS, Justice, specially concurring.

I concur in the result of the majority opinion and join all of it except the portion of Division 4 which holds, with respect to Collier's enumerated error regarding the jury charge on witness credibility, that

[b]ecause Collier "was tried after the effective date of the 2007 amendment to OCGA § 17-8-58 and 'did not specifically object to (this) charge . . . at the conclusion of the jury charge, *he has waived his right to urge error on appeal.'* [Cit.]"

Maj. Op. at 758-759 (emphasis added) (quoting *Madrigal v. State*, 287 Ga. 121, 122-123 (3) (694 SE2d 652) (2010), which in turn quotes *Metz v. State*, 284 Ga. 614, 620 (5) (669 SE2d 121) (2008)). The majority then turns to the merits of the asserted error, finding "no reversible error, much less any 'plain error' pursuant to OCGA § 17-8-58 (b), *assuming that analysis under that provision is proper in this case.*" Id. at 759 (emphasis added). That conclusion is correct.

The problem, in my view, is that under the plain language of OCGA § 17-8-58 (b) — which the majority tellingly does not quote — failure to make a specific and timely objection to a jury charge at trial does *not* waive the right to "urge error on appeal"; it limits the appellant to arguing *plain* error. And we need not "assume" that plain error review is proper in this case; OCGA § 17-8-58 (b) clearly says that it is. *Metz* initiated a line of cases that takes a truncated approach to appellate review of unobjected-to jury charges under OCGA § 17-8-58 (b) and conflicts with another line of our cases that properly applies the 2007 statute. This issue is arising with increasing frequency as criminal cases tried after July 2007 reach the appellate courts, and I believe that the time has come to reconcile our case law by overruling *Metz* and its progeny.

1. *Plain Error Appellate Review Under OCGA § 17-8-58*

(a) *The Plain Language of the 2007 Statute*

OCGA § 17-8-58 was added to the Criminal Code in May 2007 and applies to all trials that occur on or after July 1, 2007. The statute speaks in clear terms:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, *unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.*

(Emphasis added.)

Subsection (a) of the new statute changed the previous rule that this Court had recognized, which allowed defense counsel in criminal cases to preserve objections to jury charges for full appellate review merely by announcing at the end of the charges that the defendant

was "reserving" his objections, without specifying the ground for objection until after the jury returned its verdict. See *White v. State*, 243 Ga. 250, 250 (253 SE2d 694) (1979) (holding that "[w]here the trial court inquires whether there was objection [to the jury charges] and the defendant's counsel states that he reserves the right to object in his motion for new trial or appeal, there is no waiver" of appellate review); *Pruitt v. State*, 282 Ga. 30, 33 & n. 2 (644 SE2d 837) (2007). This rule allowed a defendant not to specify objections at a time when the trial court might correct an erroneous charge, leaving as the only remedy (where the error was reversible) the grant of a new trial. The new statute requires specific objections to jury charges to be made before the jury starts deliberating, giving the trial court the opportunity to correct any errors identified and salvage the trial.

Subsection (b) of OCGA § 17-8-58 begins by stating the cost of failure to make such a timely and specific objection: "preclud[ing] appellate review" of the jury charge — review that is normally de novo. Accurate jury charges are, however, important to the reliability of criminal trials. See *Brodes v. State*, 279 Ga. 435, 438 (614 SE2d 766) (2005) (discussing "the critical importance of accurate jury instructions as 'the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict' " (citation omitted)). This may explain the remainder of subsection (b) of the 2007 statute, which states that, notwithstanding the failure to properly object at trial, a jury charge must still be reviewed for "plain error" — meaning a clear or obvious error that was not affirmatively waived; that affects the defendant's substantial rights, usually by affecting the outcome of the trial; and that also seriously affects the fairness, integrity, or public reputation of judicial proceedings.[1] To make sure this point is not lost, the statute repeats it *twice*: improper objection waives appellate review *"unless such portion of the jury charge constitutes plain error which affects substantial*

---

[1] The United States Supreme Court has explained that

so-called "plain-error review". . . involves four steps, or prongs. First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error – discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Meeting all four prongs is difficult, "as it should be."

*Puckett v. United States*, 556 U. S. 129 (129 SC 1423, 1429, 173 LE2d 266) (2009) (citations omitted).

rights of the parties. Such plain error *may be considered on appeal even if* it was not brought to the court's attention as provided in subsection (a) of this Code section." OCGA § 17-8-8 (b) (emphasis added).[2]

### (b) *Our Plain Error Jurisprudence*

There is no reason not to give effect to this statutory command. It is true that, unlike the federal system, see Fed. R. Crim. P. 52,[3] Georgia has no statute or rule providing generally for "plain error" appellate review in criminal cases, and this Court has been chary about establishing plain error review by judicial decision. See *Smith v. State*, 288 Ga. 348, 349 (703 SE2d 629) (2010). See also id. at 357-360 (Hunstein, C. J., dissenting) (arguing for a broader plain error doctrine). This is a sensible approach, because plain error doctrine reflects a policy balance between requiring timely and specific objections at trial, to provide trial courts the opportunity to correct errors before judgment, and ensuring that criminal defendants whose lawyers failed to raise meritorious objections are not thereby deprived of a fair trial (recognizing that the failure to raise a valid objection that actually prejudices the defendant may also be correctable through a claim of ineffective assistance of counsel under the Sixth Amendment). If plain error appellate review is to be provided more generally, it seems appropriate to do so not by judicial decree but by formal court rule or, more in keeping with Georgia's usual approach to such criminal procedure matters, by legislation.

That said, the two areas where this Court applied plain error review before the enactment of OCGA § 17-8-58 were where statutes charged us with that duty. Thus, even absent proper objection, we

---

[2] Because OCGA § 17-8-58 (b) now mandates plain error review, we need not decide whether similar review was already available. Some cases involving pre-July 2007 trials simply apply waiver to jury charge issues not properly objected to at trial. See, e.g., *Moon v. State*, 253 Ga. 74, 74 (316 SE2d 464) (1984) ("Moon's remaining enumerations, relating to the court's initial instructions, the additional instructions given at the request of the jury, and the want of an instruction on voluntary manslaughter, were waived for lack of timely request, objection, or reservation."). Other cases, however, including a long line in the Court of Appeals, hold that an improperly preserved objection to a jury charge will still be reviewed on appeal for "substantial error in the charge which was harmful as a matter of law," OCGA § 5-5-24 (c). See, e.g., *Jones v. State*, 280 Ga. App. 287, 291 (633 SE2d 806) (2006) (" 'Failure to object to a jury charge in a criminal case constitutes a waiver except where, under OCGA § 5-5-24 (c), there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made or not.' " (citations omitted)). Accord *Loadholt v. State*, 286 Ga. 402, 404-405 (687 SE2d 824) (2010) (discussing procedures in place at the time of Loadholt's 2000 trial); *Crawford v. State*, 254 Ga. 435, 438, n. 4 (330 SE2d 567) (1985) ("Furthermore, we view the error as substantial and harmful as a matter of law so that it is subject to review by this court. OCGA § 5-5-24 (c).").

[3] Rule 51 (b) of the Federal Rules of Criminal Procedure requires parties to preserve a claim of error by properly objecting at trial. Rule 52 (b) provides, however, that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

will review alleged errors in the sentencing phase of a trial resulting in the death penalty, based on this Court's statutory mandate to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor," OCGA § 17-10-35 (c) (1). See, e.g., *Hicks v. State*, 256 Ga. 715, 730 (352 SE2d 762) (1987) ("[E]ven if improper arguments have not been timely objected to at trial, reversal is required if '"there was a reasonable probability that the improper arguments changed the jury's exercise of discretion in choosing between life imprisonment or death."'" (citations omitted)).

Even more analogous to OCGA § 17-8-58 is the immediately preceding section of the criminal procedure code, OCGA § 17-8-57, which prohibits judges in criminal cases from "intimating [an] opinion as to what has or has not been proved or as to the guilt of the accused." That statute then provides that, "[s]hould any judge violate this Code section, the violation *shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed.*" Id. (emphasis added). In accordance with that clear text, we have applied a sort of super-plain error review, holding not only that no objection at trial is required to assert a violation of OCGA § 17-8-57 on appeal, but also that if a violation is found, the conviction will be reversed without further consideration of the effect of the error on the defendant's substantial rights or the fairness and integrity of the proceeding. See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010). See also *Paul v. State*, 272 Ga. 845, 849 (537 SE2d 58) (2000) (holding, seven years before enactment of OCGA § 17-8-58, that "we will apply the plain error rule to death penalty cases, and other criminal cases in which the trial court violates OCGA § 17-8-57").

(c) *Application of OCGA § 17-8-58 to This Case*

In light of this background law and the clear text of OCGA § 17-8-58, I agree with the majority that Collier's failure to object to the jury charge on witness credibility before the jury began its deliberations precludes appellate review of that enumerated error under the usual de novo standard. See Maj. Op. at 759. I also agree with the majority's alternative conclusion that, applying de novo review, there was no reversible error, see id. at 759, and it follows that there could be no plain error either (since plain error does not exist in the absence of reversible error). Thus, the majority reaches the right result in Division 4.

However, the majority's approach, which only "assum[es] that analysis under [OCGA § 17-8-58 (b)'s plain error] provision is proper in this case," id. at 759, mistakenly suggests that plain error review is not required — a mistake that traces back to *Metz* and has led to other decisions by this Court and the Court of Appeals in which

enumerated jury charge errors have simply, but incorrectly, been deemed waived for any type of appellate review. We should correct that mistake today, to ensure that criminal defendants receive the plain error review of jury charge issues to which they are now statutorily entitled.

2. *Our OCGA § 17-8-58 Case Law*

(a) *Metz and Its Progeny*

*Metz* was this Court's first case applying OCGA § 17-8-58. In addressing the jury charge error presented on appeal, the Court first explained accurately that, "[u]nder subsection (a) of that Code section, a criminal defendant is required to 'inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate.' " 284 Ga. at 619-620 (quoting OCGA § 17-8-58 (a)). The Court then stated, again accurately, that "[s]ubsection (b) precludes appellate review where there is a '(f)ailure to object in accordance with subsection (a).' " Id. (quoting OCGA § 17-8-58 (b)). However, the Court then concluded that — in the passage quoted by the majority — "[a]s Metz did not specifically object to the charge on accomplice testimony at the conclusion of the jury charge, he has waived his right to urge error on appeal," without addressing the merits of that alleged error in any way. Id.

In reaching that conclusion, and despite quoting the first part of the statute, the *Metz* Court did not quote or address the remainder of subsection (b) — the portion that says ". . . unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section." The Court did not explain this omission, nor does the majority today, and I am unaware of any reason to disregard that portion of the Georgia Code.

In subsequent cases — which I joined without spotting this problem — jury charge issues were similarly deemed waived, citing *Metz*, without discussion of plain error or the merits of the issue. See *Thompson v. State*, 286 Ga. 889, 891 (692 SE2d 379) (2010); *Hatcher v. State*, 286 Ga. 491, 494 (690 SE2d 174) (2010). See also *Madrigal*, 287 Ga. at 122-123 (holding that the jury charge issue was waived, citing *Metz*, and also precluded from appellate review as invited error).[4] In even more cases, the Court of Appeals has relied on *Metz*

---

[4] As reflected in *Madrigal*'s alternative holding, putting aside OCGA § 17-8-58 (b)'s limitations on appellate review based on failure to comply with OCGA § 17-8-58 (a), other waiver doctrines may still apply to limit or preclude appellate review, such as invited error or the failure to enumerate the jury charge as error in the appellant's brief or to support the enumerated error by argument and citation to authority, see Supreme Court Rules 19 and 22. However, the appellant's explicit or implicit argument that an unobjected-to jury charge issue

to hold that enumerated jury charge issues were waived, without mention of plain error review. See, e.g., *Ware v. State*, 305 Ga. App. 229, 233 (699 SE2d 435) (2010); *Watkins v. State*, 304 Ga. App. 78, 82 (695 SE2d 394) (2010); *Lavigne v. State*, 299 Ga. App. 712, 714 (683 SE2d 656) (2009).

(b) *Cases Correctly Applying OCGA § 17-8-58*

The case law, however, is not consistent. In at least five other cases — including our two most recent decisions involving OCGA § 17-8-58 — this Court has correctly applied the statute, holding that normal appellate review was waived for the enumerated jury charge error (sometimes citing *Metz* for this point) but also addressing plain error. See *Crawford v. State*, 288 Ga. 425, 428 (3) (a) (704 SE2d 772) (2011) ("Appellant's contentions that the trial court erred by failing to instruct the jury on *Miranda* and the defense of accident are waived for lack of a timely request or proper objection and there is no plain error."); *Lacey v. State*, 288 Ga. 341 (703 SE2d 617) (2010) ("Accordingly, under OCGA § 17-8-58 (b), Lacey 'waived his right to urge error (in the jury charge) on appeal,' [citing *Metz*], absent 'plain error,' which does not appear here."); *Higginbotham v. State*, 287 Ga. 187, 189 (695 SE2d 210) (2010) ("Appellant's failure to object to the charge as given before the jury retired to deliberate constitutes waiver of the issue on appeal (OCGA § 17-8-58 (a)) unless 'such portion of the jury charge constitutes plain error which affects substantial rights of the parties.' OCGA § 17-8-58 (b)."); *Hicks v. State*, 287 Ga. 260, 264 (695 SE2d 195) (2010) (using similar language); *Mikell v. State*, 286 Ga. 434, 437-438 (689 SE2d 286) (2010) ("Appellant failed to make a proper objection pursuant to OCGA § 17-8-58 (a) regarding the trial court's failure to charge his supplemental requests to charge numbers 1 and 2 ... [and] we conclude that the trial court's failure to give the requested supplemental charges cannot be considered such plain error under OCGA § 17-8-58 (b) as to offset appellant's failure to object"), overruled on other grounds, *Manley v. State*, 287 Ga. 338 (698 SE2d 301) (2010). The Court of Appeals also has cited *Metz* in several cases but gone on properly to discuss plain error.[5]

---

should be reviewed de novo would not waive plain error review, because it is this Court's duty to correctly apply the law – including the legally correct standard of appellate review – to the enumerated errors. In any event, Collier expressly invoked the OCGA § 17-8-58 (b) standard in his brief. See Appellant's Brief at 26 ("This faulty instruction was plain error as it 'affects substantial rights of the parties' because it invalidated Mr. Collier's entire testimony regarding his sole defense of justification, and credibility of the witnesses was crucial.").

[5] See, e.g., *Boring v. State*, 303 Ga. App. 576, 580 (694 SE2d 157) (2010) ("OCGA § 17-8-58 (b) precludes appellate review of challenges to the jury charge where the criminal defendant has failed to object in accordance with subsection (a) of that statute, which requires a defendant to inform the court of the specific objection and the grounds for such objection

(c) *Reconciling Our Precedents*

The time has come to reconcile these two conflicting lines of precedent, as more and more criminal cases tried after the effective date of OCGA § 17-8-58 (b) reach the appellate courts and present this issue. We may resolve the issue in *State v. Kelly*, Case No. S11A0734, because the questions we posed in granting the application to appeal in that case focus specifically on the OCGA § 17-8-58 (b) plain error issue. But *Kelly* is an April Term case that may not be decided until this fall. In the meantime, the majority opinion strains to avoid resolving the issue — and I emphasize that the majority opinion should not be read as expressing the Court's ultimate position. Two other opinions released today take the same avoid-the-question approach. See *Howard v. State*, 288 Ga. 741 (707 SE2d 80) (2011); *Dolphy v. State*, 288 Ga. 705 (707 SE2d 56) (2011). Having now identified these conflicting precedents, the State's high court should not leave the Court of Appeals, trial courts, and litigants in criminal cases to pick which line to follow until we get around to deciding the question.

I see no reason to wait, because it is clear that we must follow the cases that give effect to the unambiguous text of OCGA § 17-8-58 (b), rather than the decisions that ignore that directive. To the extent that *Metz* and other cases hold or suggest that the failure to object properly under OCGA § 17-8-58 (a) waives all appellate review, even review limited to plain error under OCGA § 17-8-58 (b), those cases should be overruled without further delay.

For these reasons, I cannot join all of Division 4 of the majority opinion.

DECIDED MARCH 7, 2011.

*Sheueli C. Wang*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.

---

before the jury retires to deliberate [citing *Metz*]. Accordingly, Boring has waived any claims of error regarding the jury charges. Although OCGA § 17-8-58 (b) allows a criminal defendant to nevertheless challenge on appeal an unobjected-to charge that is 'plain error which affects substantial rights of the parties,' the court's charge on possession with intent to distribute in this case does not fall into such category." (citations omitted)).